UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 11-3120(DSD/SER)

Chuck Laitinen,

        Plaintiff,

v.                                                                    **ORDER**

Per Mar Security & Research
Corp. and Steve Sabatke,

        Defendants.


    Michael A. Fondungallah, Esq. and Fondungallah & Kigham,
    LLC, 2499 Rice Street, Suite 145, St. Paul, MN 55113,
    counsel for plaintiff.

    James B. Sherman, Esq., Chad A. Staul, Esq. and Wessels
    Sherman PC, 601 Carlson Parkway, Suite 760, Minnetonka,
    MN 55305, counsel for defendants.


This matter is before the court upon the motions to dismiss and strike pleadings by defendants Per Mar Security & Research Corp. (Per Mar) and Steve Sabatke. Based on a review of the file, record and proceedings herein, and for the following reasons, the motions are granted in part.


**BACKGROUND**

This employment dispute arises from the termination of plaintiff Chuck Laitinen by Per Mar on July 11, 2011. Per Mar is an Iowa corporation, with its principal place of business in Iowa. Per Mar provides security services to businesses. Laitinen began working at Per Mar as a general manager of physical security in

March 2003.  <u>See</u> Am. Compl. ¶ 4.  When Laitinen was hired, Per Mar had four security officers and generated $100,000 in annual revenue in Minnesota.  <u>See</u> <u>id.</u> ¶ 9.  At the time of Laitinen's termination, Per Mar's projected Minnesota revenue was $5,134,409.[1]  <u>Id.</u> ¶ 22.

From 2003 through 2006, Laitinen was paid a base salary of $40,000, and a bonus of 40% of his annual salary if he met certain profit and revenue margins.  <u>Id.</u> ¶ 13.  Per Mar increased Laitinen's base salary in 2007 to $52,000.  <u>Id.</u> ¶ 16.  The 2007 salary also included a commission bonus.  <u>Id.</u>  By 2010, Laitinen's base salary had been reduced to $45,000.  In 2011, Laitinen's base salary remained at $45,000, but Per Mar requested that he sign a bonus plan requiring 2000 new hours of business in order to avoid a $10,000 reduction in total compensation.  <u>Id.</u> ¶ 22.  Laitinen did not sign the bonus plan.  <u>Id.</u>

On July 11, 2011, defendant Steve Sabatke informed Laitinen that Per Mar was terminating his employment for falsifying training certificates.  <u>Id.</u> ¶ 30.  Laitinen alleges that Per Mar had a termination policy requiring three written counseling reports within a twelve-month period.  <u>Id.</u> ¶ 29.  Laitinen's most recent counseling report was on August 19, 2008.  <u>Id.</u>  Laitinen also presented Sabatke with a signed affidavit from nonparty Kevin Eckoff, a state-security training instructor, indicating that Per

---

[1] The amended complaint alleges "$5,134.409."  Am. Compl. ¶ 22.  The court construes this as a typographical error.

Mar was in compliance with the state of Minnesota certification requirements and that no documents were falsified.  Id. ¶ 30.

Laitinen alleges that Sabatke or Per Mar was "intent on terminating [his] employment."  Id. ¶ 26.  According to Laitinen, Sabatke told Detrick Lockridge, a subordinate Per Mar manager, that he planned to terminate Laitinen.  Id. ¶ 24.  Sabatke also purportedly met with Harlan Austin, a former Per Mar employee, at the Oak City Restaurant on June 6, 2011, and told him that Laitinen was going to be terminated for falsifying training certificates. Id. ¶ 33.

On October 7, 2011, Laitinen filed suit in state court.  See ECF No. 1-1.  Per Mar timely removed.  See id.  On November 11, 2011, Laitinen filed an amended complaint, alleging a failure to pay commissions in violation of Minnesota Statutes § 181.145, defamation, termination in violation of Per Mar policy, breach of the implied covenant of good faith and fair dealing and unjust enrichment.  Per Mar moves to dismiss and strike pleadings.


## DISCUSSION

### I.  Motion to Strike Pleadings

Per Mar argues that the court should strike Laitinen's responsive memorandum, affidavits and exhibit, because they were filed seven days late.  Laitinen responds that he did not understand that a motion to dismiss is a dispositive motion under

3

Local Rule 7.1.  The court expects attorneys to know and follow its rules, but the court finds that Per Mar is not prejudiced by this untimely filing and will not strike the pleading.  <u>See</u> <u>Brannon v. Luco Mop Co.</u>, 521 F.3d 843, 847 (8th Cir. 2008) (noting that district courts "retain[] considerable discretion" over enforcement of local rules).

The court will not, however, consider the affidavits and exhibit submitted with Laitinen's opposition memorandum.  The court does not consider matters outside the pleadings on a motion to dismiss under Rule 12(b)(6).  <u>See</u> Fed. R. Civ. P. 12(d).  Further, these documents were not "part of the public record," <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999), or matters "necessarily embraced by the pleadings and exhibits attached to the complaint." <u>Mattes v. ABC Plastics, Inc.</u>, 323 F.3d 695, 698 n.4 (8th Cir. 2003).  Therefore, the court grants in part Per Mar's motion to strike.

## II.  Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009) (quoting <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged."
Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550
U.S. 544, 556 (2007)).   Although a complaint need not contain
detailed factual allegations, it must raise a right to relief above
the speculative level.   See Twombly, 550 U.S. at 555.   "[L]abels
and conclusions or a formulaic recitation of the elements of a
cause of action are not sufficient to state a claim."   Iqbal, 129
S. Ct. at 1949 (citation and internal quotation marks omitted).

## III.  Minnesota Statutes § 181.145

Section 181.145 states that "[w]hen any person, firm, company,
association, or corporation employing a commission salesperson ...
terminates the salesperson, or when the salesperson resigns that
position, the employer shall promptly pay the salesperson ...
commissions earned through the last day of employment."   Minn.
Stat. § 181.145, subdiv. 2.   A "commission salesperson" is any
"person who is paid on the basis of commissions for sales and who
is not covered under sections 181.13 and 181.14 because the person
is an independent contractor."   Id. § 181.145, subdiv. 1.

Laitinen argues that he was not paid commissions in violation
of Minnesota Statues § 181.145.   Per Mar responds that § 181.145 is
not applicable, because Laitinen was an employee, not an
independent contractor.   The court agrees, and Laitinen concedes
that his claim should have been made under Minnesota Statutes
§ 181.13.   See Pl.'s Mem. Opp'n 4, ECF No. 19.   Because the court

does not find "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice," the court will grant leave to Laitinen to make a third attempt to state an actionable claim. <u>Sanders v. Clemco Indus.</u>, 823 F.2d 214, 216 (8th Cir. 1987) (citation omitted). Therefore, the wages and commission claim is dismissed without prejudice, with leave to amend.[2]

## IV. Defamation

For defamation, a plaintiff must show that "'the defendant made a false and defamatory statement about the plaintiff in an unprivileged publication to a third party that harmed the plaintiff's reputation in the community.'" <u>Pope v. ESA Servs., Inc.</u>, 406 F.3d 1001, 1011 (8th Cir. 2005) (quoting <u>Weinberger v. Maplewood Review</u>, 668 N.W.2d 667, 673 (Minn. 2003)). Statements made in reference to one's "business, trade or profession are actionable per se, without proof of actual damages." <u>Bedo v. Delander</u>, 632 N.W.2d 732, 739 (Minn. Ct. App. 2001) (citation omitted). Laitinen alleges that the defamatory conduct was the conversation between Sabatke and Austin, at the Oak City Restaurant

---

[2] Per Mar argues that the court should not allow leave to amend. In support, Per Mar notes Minnesota's two-year statute of limitations on wage claims, the lack of specificity regarding when Laitinen secured the alleged business for which he is owed outstanding commissions and the fact that Laitinen refused to sign the bonus agreement in 2011. <u>See</u> Defs.' Mot. Supp. 5-6. At oral argument Laitinen explained that Per Mar pays bonuses, not in a single calendar year, but over a three year period. Thus, Laitinen's ability to recover under § 181.13 is not foreclosed.

on June 6, 2011.[3]  During this conversation, Sabatke allegedly told Austin that he was going to terminate Laitinen's employment for falsifying training certifications.   Per Mar responds that the conversation is protected by qualified privilege.[4]

For qualified privilege to attach, "the statement must be made in good faith and must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause."  Bol v. Cole, 561 N.W.2d 143, 149 (Minn. 1997) (citations and internal quotation marks omitted).   "Qualified privilege applies when a court determines that 'statements made in particular contexts or on certain occasions should be encouraged despite the risk that the statements might be defamatory.'"  Id. (quoting Lewis v. Equitable Life Assurance Soc'y of the U.S., 389 N.W.2d 876, 889 (Minn. 1986)).   Here, the alleged statement was made to a former employee, at a public restaurant and without any proper purpose. Therefore, qualified immunity does not apply and dismissal of the defamation claim is not warranted.

---

[3] Laitinen also claims that an unprivileged communication occurred between Sabatke and Matt McCarty, a former Per Mar employee.  See Pl.'s Mem. Opp'n 6, ECF No. 19.  There is no record, however, of this conversation in the amended complaint.

[4] Per Mar presents several arguments as to why other conversations between Sabatke and various current and former Per Mar employees were not defamatory, but raises no arguments, other than qualified privilege, as to the conversation between Sabatke and Austin.

**V.   Breach of Contract**

"A claim of breach of contract requires proof of three elements: (1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A., 756 N.W.2d 907, 918 (Minn. Ct. App. 2008). Laitinen did not have a written employment contract with Per Mar, and thus his claim relies on a finding that a unilateral contract was formed between the parties.

"In Minnesota employment is generally considered to be at will ...." Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 741 (Minn. 2000) (citations omitted). An employee has the burden to show that the parties intended to limit discharge to good cause pursuant to an agreement. See LeNeave v. N. Am. Life Assurance Co., 854 F.2d 317, 319 (8th Cir. 1988). Laitinen argues that the "three-strike" policy gave rise to a unilateral-employment contract.[5]

"[A]n employee handbook may constitute terms of an employment contract if (1) the terms are definite in form; (2) the terms are communicated to the employee; (3) the offer is accepted by the

---

[5] Laitinen also argues that his position as a qualified representative for Per Mar to the state of Minnesota, the non-compete agreement between the parties and Per Mar's general employment practices create an exception to "at-will" employment. See Pl.'s Mem. Opp'n 9, ECF No. 19. Laitinen did not state these claims in his amended complaint.

employee; and (4) consideration is given." <u>Feges v. Perkins Rests., Inc.</u>, 483 N.W.2d 701, 707 (Minn. 1992) (citation omitted); <u>see</u> <u>Landers v. Nat'l R.R. Passenger Corp.</u>, 345 F.3d 669, 674 (8th Cir. 2003) (explaining that "progressive discipline policy" can create a "binding term of employment"). "Whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, not by their subjective intentions." <u>Pine River State Bank v. Mettille</u>, 333 N.W.2d 622, 626 (Minn. 1983).

An employee accepts an offer and supplies consideration by continuing employment. <u>See</u> <u>id.</u> at 627. Thus, the relevant inquiry is whether the policy was both definite and communicated to Laitinen.[6] Upon a motion to dismiss, the court must view the plausibility of the claim as a whole, drawing on "judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950. Common sense suggests that even these meager facts in the amended complaint are sufficient to "raise a reasonable expectation that discovery will reveal evidence" of an unilateral employment contract. <u>Twombly</u>, 550 U.S. at 556. Therefore, dismissal of the breach of contract claim is not warranted.

---

[6] Neither party attached a copy of the Per Mar employment handbook.

**VI.   Breach of Implied Covenant of Good Faith and Fair Dealing**

Laitinen next argues that by failing to pay Laitinen's bonus, Per Mar breached an implied covenant of good faith and fair dealing.  Minnesota courts, however, do not recognize an implied covenant of good faith and fair dealing in employment contracts. See Hunt v. IBM Mid Am. Emps. Fed. Credit Union, 384 N.W.2d 853, 858 (Minn. 1986).   Further, Laitinen does not allege that his employment contract contained an express covenant of good faith and fair dealing.  See Lee v. Metro. Airport Comm'n,  428 N.W.2d 815, 822 (Minn. Ct. App. 1988) (examining whether language in employment manual created contractual obligation of good faith and fair dealing).  Therefore, this claim is dismissed with prejudice.

**VII.  Unjust Enrichment**

Laitinen next argues that unjust enrichment would occur if Per Mar does not compensate him for the new customers retained during his employment.  A claim for unjust enrichment requires "the claimant to show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." Schumacher v. Schumacher, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001) (citations omitted).  Unjust enrichment, however, is an equitable doctrine that does not permit recovery where there is an adequate remedy at law.  See Curtis v. Altria Grp., Inc., 792 N.W.2d 836, 852 (Minn. Ct. App. 2010) (citation omitted).

As discussed, Laitinen possesses a remedy in Minnesota Statutes § 181.13. Although this relief may be time barred by the applicable statute of limitations, such a fact does not affect an unjust enrichment analysis. See Mon-Ray, Inc. v. Granite Re, Inc., 677 N.W.2d 434, 441 (Minn. Ct. App. 2004) (dismissing unjust enrichment claim where plaintiff "had an available and adequate remedy at law that they failed to timely pursue"). Moreover, Laitinen's job was to secure customers for Per Mar; they are not his customers. Therefore, this claim is dismissed with prejudice.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    The motions to dismiss [ECF No. 13] and strike [ECF No. 21] are granted in part, and consistent with this order;

2.    Laitinen may file a second amended complaint no later than March 14, 2012; and

3.    Per Mar shall have 14 days to respond to the second amended complaint.


Dated:  March 5, 2012

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court

11